In the Federal District Court of the Northern District of West Virginia

Timothy A. Johnson,                                       )
                                                          )
        Plaintiff                                         )          FILED
                                                          )
v.                                                        )        AUG 0 4 2020
                                                          )
Vibeke O. Dankwa, M.D.                                    )      U.S. DISTRICT COURT-WVND
Nurse Bernard Shaffer                                     )        CLARKSBURG, WV 26301
Physicians Assistant Marwan Dib                           )
        Employees of The United States                    )       3:20cv 138
        Federal Bureau of Prisons                         )       Groh
FCI Morgantown Medical Facility                           )       Trumble
                                                                  Sims
        Defendants

### Complaint for Medical Malpractice, Cruel and Unusual Punishment, Falsification of Medical Records and Deliberate Indifference to Medical Needs

Comes now Timothy A. Johnson and sets forth his claims against the Defendants as follows:

### JURISDICTION AND VENUE

The federal district courts of West Virginia have jurisdiction over this claim against the

United States for money damages pursuant to 28 U.S.C. §1345(b)(1).

The acts or omissions giving rise to this claim occurred in the Northern District of West

Virginia.  Venue therefore would be proper under 28 U.S.C. §1402(b) in the Northern District of

West Virginia.

### COMPLETION AND EXHAUSTION OF ADMINISTRATIVE LAW REQUIREMENTS

Plaintiff Timothy A. Johnson and brings this claim against the United States of America

pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

Plaintiff Timothy A. Johnson brings this claim pursuant to *Bivens v. Six Unknown Agents of*

*the Federal Bureau of Narcotics*, 430 U.S. 388 (1971).   A *Bivens* action is a judicially created damages remedy designed to vindicate violations of constitutional rights by federal actors.

Plaintiff Timothy A. Johnson has met the burden of "exhaustion of all administrative claims" to the United States Government as required by the FTCA against the Federal Bureau of Prisons (BOP) and has received a "right to sue" letter from the Bureau of Prisons. (See Exhibit 1)

Plaintiff Timothy A. Johnson has given Defendant Dankwa at least 30 days written notice prior to the filing of this complaint of a "Notice of Claim" pursuant to W.Va. Code §55-7B-6, "*Prerequisites for Filing an Action Against a Health Care Provider.*" (See Exhibit 2)

Plaintiff Timothy A. Johnson has provided a screening certificate of merit to Dr. Vibeke Danka, M.D. at least 30 days prior to filing, completed by a qualified medical expert, Dr. Jones-Johnson, pursuant to W.Va. Code §55-7B-6(b), "*Prerequisites for Filing an Action Against a Health Care Provider.*" (See Exhibit 3)

## INTRODUCTION

This action seeks damages for permanent injuries Timothy Johnson sustained while in the custody of the Federal Bureau of Prisons.

Despite Timothy Johnson's well-documented and decades long struggle with chronic sarcoidosis, employees, contractors and agents of the United States of America failed to adequately and appropriately respond to Timothy Johnson's health needs and obvious risk of permanent damage to his health.

From April 2015 to July 2019, certain current and former employees and contractors of the Federal Bureau of Prisons ("BOP") directly led to, and proximately caused, Mr. Johnson's unnecessary pain and suffering and permanent deterioration of his health.

These employees and agents of the United States were acting within the scope of their federal employment and employment as physicians and mid-level medical providers at the time of the acts and omissions complained of herein, were negligent and deliberately indifferent to Plaintiff Timothy A. Johnson's deteriorating health, and are liable to Timothy Johnson under both Federal and West Virginia law.

Your claimant alleges negligence, deliberate indifference and medical malpractice by the medical staff at FCI Morgantown resulted in his permanent injuries.

Your claimant alleges permanent damage to his right eye resulting in near total blindness.

Your claimant alleges mental and emotional distress, extreme pain and suffering due to FCI Morgantown's medical malpractice and deliberate indifference.

---

## THE DEFENDANTS

---

### *CFI Morgantown Medical Hospital and Pharmacy*

1.     The Federal Correctional Institution, Morgantown Kennedy Center (FCI Morgantown) is a minimum-security United States federal prison for male inmates in West Virginia.

2.     FCI Morgantown operates a medical center. This medical center is a "622110" industry as described and defined by the North American Industry Classification System (NAICS) . "This industry comprises establishments known as general medical and surgical hospitals primary engaged in providing diagnostic and medical treatment (both surgical and nonsurgical) to inpatients with any of a wide variety of medical conditions."

3.     FCI Morgantown also operates an in-house Pharmacy. It is an "Institutional Pharmacy." An

institutional pharmacy is defined as:

> "A pharmacy in a hospital (inpatient) or institution used by pharmacists for the compounding and delivery of medicinal preparations to be administered to the patient by nursing or other authorized personnel. Institutional Pharmacies also counsel patients and caregivers; administer vaccinations; and provide other professional services associated with pharmaceutical care such as health screenings, consultative services with other health care providers, collaborative practice, disease state management, and education classes."

**Dr. Vibeke O. Dankwa**

4.      At all times relevant to this lawsuit, Dr. Dankwa was employed by the BOP in her professional capacity as a licensed medical doctor.

5.      Dr. Dankwa is a medical doctor licensed by the State of Kentucky.

6.      Dr. Dankwa resides and currently practices in Lexington, Kentucky.

7.      At all times relevant to this lawsuit, Dr. Dankwa was the primary care physician for the FCI Morgantown Medical Center and as such,  Plaintiff Timothy A. Johnson as well, as he was incarcerated at said federal correctional institution.

8.      At all times relevant to this lawsuit, Dr. Dankwa resided in Lexinton, Kentucky and traveled the approximately 330 miles to Morgantown, West Virginia to fulfil her medical duties for the BOP.

**BOP Nurse Bernard Schaffer**

9.      At all times relevant to this lawsuit, Bernard Schaffer  was employed by the BOP in his professional capacity as a licensed registered nurse.

**Physicians Assistant Marwan Dibb**

10.      At all times relevant to this lawsuit, Mawan Dib was employed by the BOP in his

professional capacity as a licensed physicians assistant.

**FACTS**

11.    Timothy A. Johnson entered federal custody in May 3, 2015 for a federal drug violation receiving a 5 year prison sentence.

12.    Plaintiff Johnson was transferred FCI Morgantown on May 3, 2016.

13.    At his initial medical screening upon entering FCI Morgantown custody, Plaintiff informed the medical staff that he had been diagnosed in 2003 to be suffering from chronic sarcoidosis.

14.    Sarcoidosis is an inflammatory disease that affects multiple organs in the body, but mostly the lungs and lymph glands. In people with sarcoidosis, abnormal masses or nodules (called granulomas) consisting of inflamed tissues form in certain organs of the body. These granulomas may alter the normal structure and possibly the function of the affected organ(s).

15.    Sarcoidosis most often occurs between 20 and 40 years of age, with women being diagnosed more frequently than men. The disease is 10 to 17 times more common in African-Americans than in Caucasians.

16.    In many patients with sarcoidosis, the granulomas go away on their own in 2 to 3 years without the patient knowing or doing anything about them. In others, the granulomas progress to irreversible fibrosis.

17.    The exact cause of sarcoidosis is not known. The disease can appear suddenly and then disappear, or it can develop gradually and produce symptoms that come and go for a lifetime.

18.    When sarcoidosis affects the eyes it is called ocular sarcoidosis.

19.    The common symptoms of ocular sarcoidosis include blurred vision or vision loss, light sensitivity (photophobia), floaters (black spots or lines in vision), dry or itchy eyes, red eyes, burning

sensation in the eyes or pain in the eyes.

20. When a patient has symptoms that develop gradually and get worse over time, to the point where the patient becomes severely affected, from granulomas forming in the affected organ, it is determined and diagnosed to be chronic sarcoidosis.

21. Common eye problems caused by sarcoidosis include uveitis, dry eye syndrome and glaucoma. Chronic uveitis is when the eye inflammation lasts for six weeks or longer or comes back within three months of being treated. Inflammation can affect almost any part of the eye and may cause damage to the retina, which can eventually cause blindness. Rarely, sarcoidosis also can cause cataracts and glaucoma.

22. Plaintiff informed the medical staff that the inflamation of chronic sarcoidosis manifested in his eyes and had caused total blindness in his left eye and had left him with limited, but useful, sight in his right eye.

23. At this initial FCI Morgantown medical screening, the Plaintiff told that medical staff that his main medical concern was to save the remaining useful sight in his right eye.

24. Doctors most often use the ACE level test to monitor sarcoidosis.

25. Angiotensin-converting enzyme (ACE) is an enzyme that helps regulate blood pressure.

26. The granulomas associated with sarcoidosis increase the amount of ACE in the blood.

27. A doctor may use the ACE level test to help confirm a sarcoidosis diagnosis or to monitor treatment for sarcoidosis.

28. This test measures the amount of ACE in the blood with a range of 14 to 82 m/L.

29. The normal range for ACE is less than 40 u/L. Higher levels of ACE indicate active sarcoidosis.

30. On June 9, 2016, the FCI Morgantown medical staff determined and recorded that the Plaintiff's ACE level was 21 m/L.

31. Sometime thereafter, BOP employee Dr. Vibeke Dankwa, M.D. became Plaintiff's primary care physician.

32. As part of the FCI Morgantown medical facility's chronic care clinic, Mr. Johnson's blood was drawn to determine Mr. Johnson's ACE serum levels.

33. On April 4, 2017 LabCorp reported the results of the ACE test as 81 u/L.

34. Dr. Vibeke O. Dankwa reviewed the lab results on April 12, 2017.

35. At around the same time (March 29, 2017), the FMC Butner Lab reported that Mr. Johnson had high chloride and uric acid levels as well.

36. Dr. Dankwa reviewed these March 29, 2017 lab results on March 30, 2017.

37. On September 25, 2017, Timothy Johnson presented himself to the Chronic Care Clinic at the FCI Morgantown medical facility for his annual checkup and monitoring.

38. Another ACE test was ordered at this Chronic Care Clinic, this time by BOP Physician Kenneth Gomez, M.D. filling in for primary care physician Dr. Dankwa.

39. Despite reviewing the previous report that inmate Johnson's ACE level was at 81, Dr. Gomez failed to make comment, further inquiry, or take immediate corrective action and testing.

40. Approximately five (5) months later, on February 8, 2018, LabCorp reported the results of ordered ACE test as 62 u/L.

41. On February 12, 2018, Dr. Vibeke Dankwa reviewed the lab results that again showed a high level of angiotensin enzyme indicating systemic inflammation.

42. Dr. Vibeke Dankwa, M.D. failed to treat Timothy A. Johnson's known chronic sarcoidosis with ocular involvement when she was aware of clinical indications that his sarcoidosis was active.

43. Despite these test indications that sarcoidosis inflamation was active,  Dr. Vibeke Dankwa, M.D. did not inform, consult or discuss these elevated lab results with Plaintiff.

44. At no time did Dr. Dankwa attempt to initiate multidisciplinary systemic sarcoidosis treatment and control involving other medical specialities.

45. Dr. Dankwa's failure to treat systemically Mr. Johnson in accordance with the established protocols and standard of care for chronic sarcoidosis allowed the condition to remain uncontrolled and organ damage occurred.

46. Management of the disease, no matter which organ it affects, requires systemic treatment of the underlying chronic sarcoidosis.  Further, this treatment must be immediate and aggressive.

47. Dr. Dankwa was neither immediate nor aggressive in her treatment of this known serious medical condition.

48. There was a causal relation between the untreated chronic sarcoidosis and its resulting continued advancement of granulomatous inflammation observed in Mr. Johnson's eyes. Dr. Dankwa's failure to treat systemically Mr. Johnson's active sarcoidosis while in her medical care caused further organ (eye) damage to his useful eye.

49. Further, failure Dr. Dankwa  to treat Mr. Johnson's active chronic sarcoidosis according to the well-established standard of care for this disease resulted in an emergency vitrectomy eye surgery on August 6, 2018 to clear his eye of unnecessary inflamation, including a fibrous

stalk growing near his optic nerve.

50.    At no time did Dr. Vibeke Dankwa, M.D. discuss a treatment plan for Mr. Johnson's underlying chronic sarcoidosis disease.

51.    At no time, did Dr. Dankwa administer prednisone or methotrexate to her patient for his active chronic sarcoidosis as indicated by Mr. Johnson's ACE and other routine blood tests.

52.    Dr. Dankwa did not contact the primary care providers at WVU Hospital, its Emergency Department or the ophthalmologist specialists at WVU Eye Institute regarding these blood test indicating active sarcoidosis and inflammation.

53.    Dr. Vibeke Dankwa, M.D. deliberately disregarded and ignored the elevated ACE test results knowing that such disregard was contrary to Plaintiff's serious medical needs.

54.    Dr. Vibeke Dankwa, M.D. knew as a medical doctor that failure to treat chronic sarcoidosis with a patient with ocular involvement more likely than not, would cause severe and permanent damage to Plaintiff's one useful eye.

55.    Dr. Vibeke Dankwa, M.D.'s  indifference to Mr. Johnson's medical health allowed Mr. Johnson to lose the remaining vision in his right eye and experience unnecessary pain suffering and further deterioration of his general health due to Dr. Vibeke Dankwa, M.D.'s failure follow established medical procedures in the treatment of chronic sarcoidosis.

56.    Dr. Vibeke Dankwa, M.D. had a duty to provide adequate medical care to her patient, failed that duty by deviating from the standard of care of a physician and such deviation caused Plaintiff to be rendered blind in his one useful eye.

**Nurse Bernard Shaffer**

57.    On January 11, 2018, Dr. Ghassan Richard Ghorayeb, M.D., one of Plaintiff's

ophthalmology medical care providers at an outside facility, to wit: West Virginia University Eye Institute, made note in Mr. Johnson's medical records advising other health care providers that he felt the need for a referral to a pulmonologist "to confirm lack of systemic progression and lack of need for systemic treatment."

58. During this January 11, 2018 examination, Dr. Ghorayeb noted that the Plaintiff was suffering from inflamation in his right eye as follows: "Trace cell with 2+ flare. Poor view to back but fibrosis starting around nerve."

59. Dr. Ghorayeb also noted, "Patient does not have a PCP (primary care physician) and stressed critical need for that."

60. The BOP medical records are in stark contrast with the WVU Health records for this January 11, 2018 visit to the West Virginia Eye Institute.

61. BOP Nurse Bernard Shaffer, R.N. recorded the "Clinical Encounter" in Mr. Johnson's BOP medical Records.

62. Defendant BOP Bernard Shaffer, R.N. wrote, "Inmate returned from WVU Eye Institute Dr. Lai after a followup for uveitis with recommendations....(for eye drops)."

63. The WVU medical records clearly show that Mr. Johnson saw Dr. Ghassan Richard Ghorayeb, not Dr. Lingo Lai.

64. Deliberately indifferent to Tim Johnson's medical treatment, BOP Nurse Bernard Shaffer, R.N., omitted Dr. Ghorayeb's medical assessments and his plan of care.

65. BOP Nurse Shaffer did fabricate and falsify the Plaintiff's BOP medical records. Nurse Shaffer's falsification had serious implications for the quality of patient care rendered to Plaintiff.

66.    BOP Nurse Shaffer's falsification of the medical records deliberately disregarded the recommended course of medical care devised by ophthalmology specialist, Dr. Ghassan Richard Ghorayeb of the West Virginia University Eye Institute.

67.    Dr. Ghorayeb's "stressed the critical need" for the BOP to provide a primary care physician (PCP) to attend to inmate Johnson's underlying chronic sarcoidosis.

68.    FCI Morgantown medical staff was responsible for treating inmate Johnson's chronic sarcoidosis.

69.    The WVU Hospital System medical records show that Dr. Ghorayeb was concerned that FCI Morgantown was not providing proper monitoring and systemic treatment of inmate Johnson's chronic sarcoidosis.

70.    Due to Nurse Shaffer's fabrications, the FCI Morgantown medical staff was unaware that the WVU Eye Institute ophthalmologists were seeing and reporting "Trace cell with 2+ flare" indicating that inmate Johnson was suffering from active inflammation from his chronic sarcoidosis.

71.    BOP Nurse Shaffer was deliberately indifferent that a "fibrosiswas starting around" the optic nerve of inmate Johnson's sole useful eye.

72.    BOP Nurse Shaffer's deliberate indifference to inmate Johnson's medical needs prevented other BOP medical personnel from properly monitoring and controlling his sarcoidosis inflammation with such drugs as predisone and methotrexate.

73.    BOP Nurse Shaffer's fabrications along with Dr. Dankwa's failure to respond to ACE tests of 81 and 62 caused inmate Johnson's chronic sarcoidosis to remain untreated while in BOP custody.

74.   This non-treatment caused the Plaintiff to lose vision in his sole useful eye.

**BOP Physician's Assistant Mawan Dib's Failure to Properly Review Medical Records**

75.   BOP Nurse Shaffer's work-product was cosigned and reviewed by his superior, BOP Physician Assistant Marwan Dib 45 minutes after Nurse Shaffer recorded and completed the"Clinical Encounter."

76.   BOP Physician's Assistant Marwan Dib failed to correct BOP Nurse Shaffer's shortcomings and omissions on cosign and review.

77.   The FCI Morgantown medical staff had none of this vital information and medical specialist recommendation in its medical records for inmate Johnson.

78.   Further, despite Dr. Ghorayeb's concern that "Patient does not have a PCP and stressed need for that" this most important medical recommendation was never reviewed by his BOP primary care physician, Dr. Vibeke Dankwa, M.D.

79.   Further, BOP Nurse Shaffer and BOP Physician Assistant Dib reported that Nurse Shaffer had counseled Mr. Johnson on these topics when they had not.

80.   Moreover, BOP Nurse Shaffer and BOP Physician Assistant Dib memorialized in the BOP medical records that Mr. Johnson "verbalizes understanding" of the counseling that he never received.

**Institutional Indifference of FCI Morgantown Medical Facility**

81.   The FCI Morgantown medical staff failed inmate Johnson throughout his time in custody.

82.   Dr. Dankwa was not a resident primary care provider but traveled 330 miles from Lexington, Kentucky to Morgantown, West Virginia to conduct these physical examinations.

83. Dr. Kenneth Gomez saw the ACE test level of 81, that had been neglected by Dr. Dankwa, but saw no urgency in expediting another ACE test instead waiting months for the new test to reveal a continued elevated ACE of 62.

84. BOP Physicians Assistant Marwan Dib prescribed and administered prednisone for inmate Johnson's hip pain in violation of BOP guidelines that steroids are not to be used for pain management.

85. Diagnosing inmate Johnson's hip pain as an indication of active sarcoidosis, BOP Physicians Assistant Marwan Dib prescribed and administered a dosage of prednisone that would have no effect to control inmate Johnson's chronic sarcoidosis.

86. When inmate Johnson experienced a corneal detachment after his eye surgery, the BOP medical staff did not take immediate action to return him to the WVU Eye Institute for evaluation by the operating surgeon.

87. The FCI Morgantown pharmacy failed to provide specialized medications prescribed by outside medical specialists for inmate Johnson's unique medical needs in a timely manner.

88. Your Plaintiff alleges that the overall attitude of the FCI Morgantown medical staff is one of indifference, sloth and incompetence thereby denying all inmates of reasonable, routine and reasonable medical care.

**Conclusion**

The acts and omissions of FCI Morgantown medical staff caused inmate Johnson's known medical condition of chronic sarcoidosis with ocular involvement to remain untreated the entire time while incarcerated. The failure to treatment this known and controllable medical

condition directly led to the Plaintiff's lose of his useful vision rendering him blind.

**Prayers for Relief**

Wherefore, your Plaintiff prays for the following:

a) That this case be heard at bench trial at the earliest available date;

b) That this honorable court find that staff at FCI Morgantown medical facility acted with deliberate indifference to Plaintiff's medical needs;

c) That this honorable court find Dr. Vibeke Dankwa liable for medical malpractice;

d) That this honorable court find that Nurse Bernard Shaffer wrongfully altered inmate Johnson's medical records;

e) That this honorable court find that Physicians Assistant Marwan Dib was negligent in supervising and reviewing Nurse Shaffer's work product and making a false statement that Mr. Johnson had been counseled regarding a medical appointment that never occurred;

f) That this honorable court award $5,000,000 in damages to compensate Mr. Johnson for the loss of use of his one eye with useful sight;

g) That this honorable court grant any other relief that it deems just and legally proper.

Respectfully submitted,

Timothy A. Johnson

3500 Staunton Avenue, S.E.
Apartment 12
Charleston, WV 25340
(304) 767-2395